Andy FRANKLIN *v.* STATE of Arkansas

CA CR 82-103                                    644 S.W.2d 318

Court of Appeals of Arkansas
Opinion delivered January 5, 1983

*Frederick S. "Rick" Spencer,* for appellant.

*Steve Clark,* Atty. Gen., by: *Alice Ann Burns,* Asst. Atty. Gen., for appellee.

GEORGE K. CRACRAFT, Judge. Andy Franklin was tried by a jury and convicted of the crimes of rape, aggravated robbery and theft of property. He was sentenced to two ten-year terms of incarceration on the rape and aggravated robbery convictions with the sentences to run consecutively. He was found guilty of misdemeanor theft and sentenced to a one year concurrent term in the county jail. At the time of the trial the appellant was sixteen years of age and contends on appeal that the trial court erred in not transferring the case to juvenile court pursuant to Ark. Stat. Ann. § 45-420 (Supp. 1981). We do not agree.

Prior to 1981 the rule governing transfer to the juvenile court of felony or misdemeanor charges against juveniles was within the sole discretion of the trial judge. Former Ark. Stat. Ann. § 45-420 (Repl. 1977) [Act 451, Ark. Acts of 1975, § 20] provided that the question of the transfer of a case of this nature to the juvenile court was discretionary with the trial judge and our cases have held that his ruling would not be disturbed unless that discretion was abused. *Sargent* v. *Cole, Judge,* 269 Ark. 121, 598 S.W.2d 749 (1980); *Little* v. *State,* 261 Ark. 859, 554 S.W.2d 312 (1977).

Act 390 of 1981 amended Ark. Stat. Ann. § 45-420 to provide that when a juvenile is charged with a felony or misdemeanor the judge shall, on his own motion or the motion of either party, conduct a hearing to determine whether the case should be transferred to another court having jurisdiction over the matter. It narrowed the exercise of the judge's discretion to the consideration of only the following factors:

(a) The seriousness of the offense and whether violence was employed by the juvenile in the commission of the offense.

(b) Whether the offense is part of a repetitive pattern of adjudicated offenses which would lead to the determination that the juvenile is beyond rehabilitation under existing rehabilitation programs, as evidenced by past efforts to treat and rehabilitate the juvenile and the response to such efforts.

(c) The prior history, character traits and mental maturity and any other factors which reflect on the juvenile's prospects for rehabilitation.

A hearing was conducted on appellant's motion to transfer. The trial court denied that motion. We cannot find that the trial court did not properly consider the prescribed criteria or that he erred in refusing to transfer this case to the juvenile court.

In retaining jurisdiction the court noted that the offenses were serious ones and involved violence. He pointed out appellant's previous patterns of behavior. He also noted that Dr. Butts, a court appointed psychiatrist, testified that the likelihood of rehabilitation of the appellant was not nearly so great as might be in the case of other juveniles. He noted Dr. Butts had concluded that there was absolutely no medical evidence for the court to indulge any assumption that there was a brain injury which affected the defendant's abilities to conform his conduct to the requirements of the law.

These findings by the court are fully supported by the testimony. The testimony of the victim, which was disputed only in part by the appellant, reflects that she was a fifty-eight year old widow, with grown children, who lived alone. In October of 1981 she arranged through appellant's grandmother for him to rake leaves. After he completed the work, the victim felt that she had been overcharged and told him so, indicating that she would not recommend him to her friends. The appellant "glared at her" but did not back down on the price.

The next time she saw him was at 4:40 a.m. on the morning of December 23rd when he awakened her, stating that he had been in a wreck and needed to use her telephone. She stated that she heard him carry on a purported conversation with his grandmother about the wreck, which he admitted was faked. She testified that while her back was turned he wrapped the telephone cord around her neck and tried to strangle her. When she struggled he repeatedly hit her in the head with "something sharp," wounding her so severely that "my blood was squirting up like a fountain." He then stated to her that the blood was getting all over everything and dragged her to the kitchen, pushed her head in the sink and turned on the water. He dragged her into the living room and forcibly disrobed her. As she attempted to repel him he gave her a karate punch in the kidney and back which rendered her helpless and then admittedly raped her. He then went to the kitchen and began to rub the blood off his clothing, sliced his own finger with a knife, and smeared his blood on his pants, stating that this would make it appear that the blood was his own. He then demanded her money. She had $18.00 in her purse and he took $9.00 and returned the rest. When he left the house he threatened to kill her if she summoned help or told the police.

She testified that he was not intoxicated, that at no time did she smell any alcohol on his person or breath. The police officers corroborated the blood stains and her injuries. As a result of her injuries she was hospitalized for three weeks and is still under the weekly treatment of a doctor for the back injury. The blows to her face ruptured several blood vessels

so severely that at the time of the trial she still had a "black eye."

The seriousness of these crimes and the violence with which they were perpetrated would alone appear to be sufficient to sustain the court's refusal to transfer these causes to the juvenile court.

At the hearing on the motion to transfer, appellant's mother testified that he had earlier sustained a fractured jaw in a karate contest. As a result of his injuries he sustained damage to his eye and partial paralysis of his face requiring surgical repair. He had not seen a doctor since this surgery. She stated that she noticed a change in his behavior after the accident, that he became hostile toward his parents and there was a total failure of communication between them. He ran away from home and went to Florida where he remained for a while with relatives. On his return to Arkansas he again left home and spent a short period residing with friends.

His mother admitted, however, that he had always had a quick temper which manifested itself in "yelling, slamming doors, kicking the wall and then going outside to cool off." When he was twelve he and a friend had stolen money from a neighbor's house and divided it. The charges against them were dropped. At fourteen he had unlawfully taken a vehicle and was apprehended by the police while "joyriding." The owner of the vehicle did not press charges on condition that the appellant obtain counseling at the youth bureau. She testified that the appellant attended one session of counseling but refused to return. Appellant admitted that on the day of the rape he had taken unauthorized control of another's truck and wrecked it.

It was suggested that as a result of the karate injury the appellant had sustained brain damage which affected his ability to conform to normal behavior. At the hearing Dr. Butts stated that the appellant had a non-psychotic character behavior problem but was very clear on cause and effect relationships. He stated that there was an extreme lack of remorse for his actions and an unwillingness to accept responsibility for his conduct. If he was not intoxicated at

the time of the incident, organic brain damage was an unlikely possibility and the doctor found no evidence of such damage. Dr. Butts stated that appellant understood both the nature of the proceedings against him and the gravity of the charges, but in spite of this he did not consider it realistic that he should pay the maximum penalty and expected only brief incarceration. He stated that the appellant had full ability to assist in his defense and appreciated the manifestations of his behavior at the time of the offense. He found him to be prone to act aggressively and lack volition or control because he escalated his anger above the level of control. On a hypothetical question based on the victim's account of his actions at the time the crime was committed, Dr. Butts concluded that this behavior implied considerable cognitive intent and premeditation and entailed realization of right and wrong. He stated that these were not the actions of an irrational person.

The appellant committed a serious, vicious and brutal crime in the rape, beating and robbing of this victim. The nature and severity of her injuries were fully corroborated by her attending physician and by photographs taken of her on the date of the crime. The court stated that he considered this first criterion in making his determination.

The second criterion is not fully applicable here for there was no evidence of a repetitive pattern of *adjudicated* offenses from which past efforts to treat and rehabilitate the juvenile could be evaluated. However, the December 23rd criminal episode was not an isolated occurrence; appellant had previously indulged in criminal activity of theft and two unauthorized uses of a vehicle, the second connected with the criminal episode of December 23rd. The appellant freely admitted that he had unlawfully taken a vehicle on the night in question and shortly before attacking the victim had wrecked it. At the time of his first offense of "joyriding" the charge had been nolle prossed on his agreement to seek rehabilitation, which he never did.

The third criterion was also considered. There was evidence of appellant's prior history of criminal activity, his character traits and his mental maturity. There was con-

siderable evidence from the doctor and appellant's mother as to his temper, hostility and total lack of remorse for his conduct, particularly for the injuries inflicted upon this victim. Not only the testimony of the doctor but that of the appellant demonstrated that his actions in raping and beating this victim were premeditated and voluntary since he deliberately wiped up the blood, cleaned blood off himself and cut his finger to make it look like any blood found on his clothes was his own.

We cannot say that the trial court abused his discretion or otherwise erred in retaining jurisdiction.

While no medical evidence was submitted on behalf of the appellant at the hearing to transfer, a psychologist was called to testify as to his responsibility for his actions during the trial. This medical witness disagreed in some respects with the testimony of Dr. Butts given both at the hearing on the motion to transfer and at the trial. At the conclusion of all of the evidence at the trial the appellant renewed his motion to transfer the cause to juvenile court. Any conflicts between the testimony of appellant's witnesses and that presented by the State were to be resolved by the trial court. In overruling the motion again the court clearly articulated those stated reasons clearly showing that he had given consideration to all of the criteria set forth in Ark. Stat. Ann. § 45-420 (Supp. 1981).

We affirm.